IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| GLORIA J. HELTSLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 3:07cv367-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq., and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to the United States

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Ingram v. Comm. of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction**. Plaintiff Gloria Heltsley ("Heltsley") was 49 years old at the alleged date of onset and 52 years old at the time of the hearing before the ALJ. (R. 16). She

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

has the equivalent of a twelfth grade education.[4] (*Id*.). Her prior work experience includes work as a cashier, keyboard assembler, laundry worker, manager of a convenience store and gas station, and deli clerk and cashier. (R. 20). Following the hearing, the ALJ concluded that the plaintiff has severe impairments of "congenital fusion C2-3, degenerative disc disease, possible bilateral carpal tunnel syndrome, but normal nerve conduction studies, obesity and cephalgias." (R. 18-19). The ALJ concluded that the plaintiff could perform her past relevant work. Consequently, the ALJ concluded that the plaintiff was not disabled. (R. 20-21).

**B. Plaintiff's Claims**. As stated by the plaintiff, she presents the following three issues for the Court's review:

I. Whether the ALJ erred in the application of the 11th Circuit Pain Standard. Specifically, if the ALJ erred in finding that the record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of the pain and limitations alleged. (Tr.20).

II. The ALJ erred in giving significant weight to the consultative evaluations of Dr. Aldaher and Dr. Chan. (Tr.20).

III. The ALJ did not properly evaluate the effect of the Plaintiff's obesity on her impairments.

(Pl's Br. at 5, 7, & 8).

## IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return

---

[4] The record demonstrates that Heltsley received her General Equivalency Degree ("GED"). (R. 228).

to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments. Within this analytical framework, the court addresses the plaintiff's specific claims.

**1. Credibility Analysis/Pain Standard.** "Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability." *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987). The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that

5

condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

According to Heltsley, her moderately severe pain prevents her from working. (Pl's Br. at 6). She contends that the ALJ erred in finding "no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms." (Pl's Br. at 6 *quoting* R. 20). She points to x-rays as objective medical evidence of a condition sufficiently severe to cause her pain. X-rays on January 14, 2004, revealed the following.

> CERVICAL SPINE: There is a complete congenital fusion of C2 and C3. There are no other significant findings but C7 is largely obscured by superimposed soft tissue shadows and cannot be fully evaluated.
>
> LUMBAR SPINE: There is evidence of moderately severe degenerative disc disease at the level of L1-2 and at the level of L5-S1. There are no other significant findings.

(R. 135).

Notwithstanding this objective evidence, as explained more fully below, the ALJ did not fully credit Heltsley's testimony regarding her pain. At the administrative hearing, the plaintiff testified that she has pain in her hands from carpal tunnel and arthritis (R. 225); pain in her lower back, neck, and legs (R. 234-35); headaches (R. 237) and vision problems (R. 226, 237). She further testified that she switches between Naproxen and Ibruprofen for the pain. (R. 234).

Heltsley testified that she goes to church every week and she exercises by walking. (R. 238). She does a little cooking and when she shops for groceries, she takes her husband with her to lift "the heavy stuff." (R. 239). She drives but she has difficulty with the gearshift and seeing at night. (R. 228).

The ALJ discredited the plaintiff's testimony of disabling pain and functional restrictions. (R. 20).

> I find the claimant's testimony of disabling pain and functional restrictions is disproportionate to the objective medical evidence. The record does not contain objective signs and findings that could reasonably be expected to produce the degree and intensity of pain and limitations alleged. There are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms. The physical findings in the record do not establish the existence of neurological deficits, significant weight loss, muscle atrophy, or other observable signs often indicative of protracted pain of the intensity, frequency, and severity alleged.

(R. 20).

If this were the extent of the ALJ's credibility analysis, the plaintiff might be entitled to some relief. However, the ALJ also discredited the plaintiff's testimony based on the following.

7

> The claimant had complaints of back pain and x-rays on January 12, 2004, by Dr. Aldaher reflect a congenital fusion of C2 and C3 and moderately severe degenerative disc disease at L1-2 and L5-S1; however, I note that Dr. Aldaher reported that there was no spasm or deformity of the back and there was no abnormality of range of motion in the lumbosacral area. The claimant had normal gait and no muscle weakness. Her reflexes were normal and she had negative seated leg raising and no apparent muscle atrophy. Dr. Aldaher opined the claimant could perform work related activities such as sitting, standing, walking, lifting, carrying and handling of objects. Dr. Chan reported that the claimant had no positive findings in her cervical thoracic or lumbar spine. Dr. Chan also opined the claimant could perform work related activities such as sitting, standing, walking, lifting, carrying or handling objects.
>
> The claimant complained of wrist pain and headaches. However, an electrodiagnostic study on October 28, 2004, revealed normal motor and sensory nerve conduction velocities with normal amplitudes in bilateral median nerves. Normal palmar latencies with normal amplitudes in bilateral median sensory nerves. Dr. Chan stated there was no electrophysiological evidence of neuropathy in bilateral median nerves. The claimant complained of headaches and records from Russell Hospital reflect the claimant was treated for tension headaches. I note that the claimant did not complain of headaches to Dr. Aldaher or to Dr. Chan when describing her illnesses at the consultative evaluations. I find that the claimant's headaches were not of the severity that would have prevented work activity. She complained of vision problems, but Dr. Aldaher reported in January 12, 2004, that the claimant's vision without glasses was 20/50 on the right side and 20/50 on the left side. The overall evidence does not support the claimant's allegations of such severe impairments that all work activity would be precluded.

(R. 19).

The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision." *Holt,* 921 F.2d at 1223. The ALJ's reasons for discrediting the plaintiff's testimony of pain and disability were both clearly articulated and supported by substantial evidence. *Id.* Relying on the treatment records, objective evidence, and Heltsley's own testimony, the ALJ concluded that the

plaintiff's allegations regarding the severity of her pain were not credible and discounted that testimony. The ALJ considered that the plaintiff's underlying condition is capable of giving rise to some pain and other limitations; however, he concluded that the plaintiff suffers from only mild to moderate intermittent pain. Consequently, he discredited the plaintiff's testimony that she suffers from disabling, intractable pain. After a careful review of the record, the court concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both clearly articulated and supported by substantial evidence. Thus, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.

To the extent that the plaintiff is arguing that the ALJ should have accepted her testimony regarding her pain, as the court explained, the ALJ had good cause to discount her testimony. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

**2. Weight given to Consultative Physicians' Opinions.** The plaintiff alleges that the Commissioner erred in giving great weight to the opinions of Drs. Aldaher and Chan, the examining consultative physicians. According to the plaintiff, the ALJ's conclusion that the opinions of these physicians are well supported by the evidence and consistent with the record is unsupported by substantial evidence.

The plaintiff underwent a consultative physical examination by Dr. Aldaher on January 12, 2004. At that time, Heltsley complained

of right and left hand pain and wrist pain bilaterally. Diagnosed with carpal tunnel syndrome. Denies any muscle weakness. No numbness. She has had no surgical intervention.

(R. 131). His examination revealed no abnormal range of motion in Heltsley's neck, back, upper or lower extremities. (R. 132). There was no muscle weakness, and no "apparent muscle atrophy." (*Id*.) Her reflexes and grip were normal and the Romberg test was negative. (*Id*.) Her pulses in the pedal, popliteal and femoral areas were palpable bilaterally. (*Id*.). Dr. Aldaher opined that the source of Heltsley's wrist and hand pain was "possible carpal tunnel syndrome." (R. 133)

On October 28, 2004, the plaintiff underwent a consultative physical examination by Dr. Chan. Her chief complaint at that examination was hand pain. (R. 161).

> Mrs. Heltsley said that she had pain in both hands, wrist and forearms off and on for 2 years. The pain came on day and night time. He (sic) did not complain of numbness of hands. She had pain in the neck and was severe at times, she said that the pain got worse recently for 3 to 4 months. The neck pain was noted for about 10 years. She also had pain in joints of knees and ankles, and in the lower back on different occasions.

(*Id*.).

Dr. Chan opined that the plaintiff's wrist and pain "might be due to arthritis, myalgia or muscle spasm." (R. 163). However, Dr. Chan performed an electrodiagnostic nerve conduction study which was normal, bilaterally. (R. 163-64). He opined

> that [Heltsley] will be able to do work-related activities such as sitting, standing, walking, lifting, carrying, and handling objects. Because of the pain in the joints of wrists, she might have difficulty doing repetitive movement on hands and wrist. She was obesity (sic) and would have difficulty in doing frequent bending and stooping movements. Hearing and speaking are normal. She will be able to travel by herself.

10

(R. 163). Dr. Chan completed a physical capacities evaluation ("PCE") form, consistent with his findings. (R. 166-168).

The ALJ found that the plaintiff

> retains the following residual functional capacity: no limitations on standing, walking, or sitting; constantly lift and carry up to 3 pounds; frequently lift and carry up to 10 pounds; occasionally lift and carry up to 20 pounds; never lift or carry over 30 pounds; constantly feel, walk, or hear; frequently use right arm, left arm, right leg, and left leg, handle and finger; occasionally climb, balance, stoop, kneel, crouch and reach overhead; frequently drive automobile equipment; occasionally be exposed to extreme cold, extreme heat, wetness and humidity, vibration, exposure to fumes, odors, dusts and gases, moving mechanical parts or work in high places. I further fine that the claimant experiences mild or moderate pain which occurs intermittently, which occasionally interferes with concentration, persistence and pace.

(R. 20).

The plaintiff argues that these physicians' conclusions are inconsistent with and irrational in light of the x-rays that reveal that "moderately severe degenerative disc disease" and "complete congenital fusion of C2 and C3." (Pl's Br. at 6-7). Contrary to Heltsley's assertion, Drs. Aldaher and Chan's opinions were supported by their own consultative examinations, x-ray interpretation and nerve conduction studies. Both doctors also considered Heltsley's subjective complaints in conjunction with their physical examinations.[5]

---

[5] Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in her regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports

This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges, supra.*

---

of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)).  The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error.  *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).   However, there are limited circumstances when the ALJ can disregard the treating physician's opinion.  The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence.  *See Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987).  The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment.  *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion.  *Schnorr*, 816 F.2d at 581.

Although the plaintiff has been seen at the Helping Hands Health Clinic (R. 110-14), the East Alabama Medical Center (R. 122-28), and the Russell County Medical Center (R. 147, 154, 170), these records support the conclusions of Drs. Aldaher and Chan.  For example, Heltsley was first seen at the Helping Hands Clinic on April 6, 2001. (R. 114).  At that time, she complained of pain in her hands and feet; she did not complain of back or neck pain.  (*Id.*)  On September 26, 2001, she complained of left hip pain and was diagnosed as suffering from a lumbar strain.  (R. 113).  The treatment record of October 26, 2001, indicates that Heltsley was suffering from hand pain, osteoarthritis, and cervical strain.  (R. 112).  On December 10, 2001, Heltsley reported that her pain had "improved tremendously.  Better than it has been for 3 years."  (R. 110).

On January 17, 2002, Heltsley presented to the East Alabama Medical Center complaining of pain in her left hand.  (R. 128).  On February 15, 2002, she presented complaining of a tension headache.  (R. 126).  Finally, on April 19, 2002, she presented complaining of left wrist and hand pain as well as neck and shoulder pain.  (R. 122-23).  The examining physician found Heltsley's evaulation to be "somewhat questionable" because

> [t]he patient appeared to be in moderate distress when directly observed.  When not directly observed the patient would sit holding a book with her left arm and moving it and turning pages without difficulty.

(*Id.*)

On one visit to the Russell Medical Center on January 29, 2005, Heltsley that when she "lift[s] something heavy, [her] head hurts. [She] picked up some kerosene yesterday." (R. 170).  She was diagnosed with a tension headache.

Furthermore, a review of the ALJ's decision demonstrates that he conducted a thorough analysis of the testimony and considered all of the objective medical evidence in reaching his decision. The court concludes, based upon its review of the ALJ's decision and the objective medical evidence of record, the ALJ's reliance on the opinions of Drs. Aldaher and Chan to conclude that the plaintiff retains the residual functional capacity to perform work is supported by substantial evidence.

>    **3. Failure to consider obesity**.  Finally, the plaintiff argues that the
>
> ALJ did not fully consider the effect of Plaintiff's obesity on her ability to perform work related activities on a sustained basis. The ALJ acknowledged that the Plaintiff suffers from obesity. (Tr. 21). Although the listing for obesity is no longer in force, the Commissioner must determine at step three of the sequential process whether the Plaintiff's obesity in combination with other impairments, equals one of the other listed impairments. SSR-02-1p. The record does not indicate that the ALJ properly assessed the vocational impact of the Plaintiff's obesity on her ability to perform work related activities.

(Pl's Br. at 8). Beyond this broad, conclusory statement, Heltsley alleges no facts and points to no evidence in the record in support of her position. The burden is on the plaintiff to demonstrate that the Commissioner's decision is not supported by substantial evidence, and the argument of counsel is insufficient to meet this burden.

More importantly, however, the court concludes that the ALJ properly considered the plaintiff's obesity on her ability to perform work. Dr. Chan opined that the plaintiff's "obesity might make it difficult for her to do frequent bending and stooping movements." (R. 18). In determining Heltsley's residual functional capacity, the ALJ determined that she could only occasionally stoop, kneel or crouch. (R. 20). Thus, the ALJ met any

13

responsibility to consider the effect of Heltsley's obesity on her ability to work.

## V.  Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 11th day of February, 2008.

        /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE